UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>FRANCISCO LUIS OLMOS,<br><br>  Defendant. | Case No. 22-20426<br>Hon. Laurie J. Michelson |

**ORDER ON DEFENDANT'S MOTION TO DISMISS FOR SPEEDY TRIAL RIGHT VIOLATION [90]**

Francisco Luis Olmos was indicted on drug charges in the Eastern District of Michigan. Years later he was arrested in Mexico and transferred to United States custody. He had his initial appearance and removal proceedings in the District of Arizona. Following delays in his transportation, Olmos was ultimately arraigned in the charging district on July 8, 2025. That is when he entered a not guilty plea and the Speedy Trial Act clock started. Olmos, however, believes it started—and then ran out—much earlier. Thus, he seeks dismissal of the indictment with prejudice. (ECF No. 90.) The motion is fully briefed (ECF Nos. 100, 104) and adequately addresses the relevant issues. *See* E.D. Mich. LCrR 12; E.D. Mich. LR 7.1(f). For the reasons stated below, the motion is DENIED.

**I.**

The Speedy Trial Act requires that, "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the

commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Failure of the government to bring the defendant to trial within the 70-day period results in dismissal of the case. *Id.* § 3162(a)(2). "The Act, however, excludes from the 70-day period delays due to certain enumerated events." *Bloate v. United States*, 559 U.S. 196, 199 (2010) (citing 18 U.S.C. § 3161(h)).

## A.

The relevant timeline here involves proceedings in both the District of Arizona and the Eastern District of Michigan.

On August 17, 2022, Olmos was indicted in the Eastern District of Michigan on charges of conspiracy to possess with intent to distribute cocaine and methamphetamine, unlawful use of a communication facility, and possession with intent to distribute a controlled substance. (ECF No. 1.) At that time, Olmos was living in Mexico. He was not taken into custody by Customs and Border Protection until January 17, 2025. A few days later, on January 22, 2025, Olmos had his initial appearance in the District of Arizona. (ECF No. 78.) During his first court appearance in the arresting district, he was represented by the federal defenders' office. According to the Arizona docket, on January 23, 2025, retained attorney Clay Hernandez entered a "special limited notice of appearance" on Olmos' behalf. *United States v. Olmos*, No. 25-05603 (D. Ariz. Jan. 23, 2025), ECF No. 3. The notice states

2

that "Counsel undersigned hereby enters pleas of NOT GUILTY to any and all charges and further DENIES any and all allegations lodged in this matter." *Id*. But it does not appear this was ever done on the record or with Olmos present. Indeed, this document is not part of the materials transferred to this Court pursuant to Federal Rule of Criminal Procedure 5.

Following a detention hearing in Arizona on February 18, 2025, the magistrate judge ordered Olmos released on bond. (ECF No. 78, PageID.549.) The order was temporarily stayed when the government expressed its intention to appeal. So a little later that day, this Court conducted a telephonic status conference with counsel to discuss the appeal. (Olmos contends that the Speedy Trial Act clock started running on this date.) Thereafter, the parties stipulated to extend the stay (ECF No. 81) to permit briefing on the government's motion to revoke the release order (ECF No. 82).

The following month, on March 24, 2025, this Court held the bond appeal hearing. Olmos waived his appearance so that he could remain in Arizona where his family and counsel reside and where he intended to reside if released on bond. (ECF No. 81.) Following the hearing, the Court reversed the magistrate judge's ruling and ordered Olmos detained pending trial. (ECF No. 86.)

But Olmos was still not transferred to this District for nearly three months. The government advises that Olmos needed a medical clearance before he could be transferred out of Arizona. (ECF No. 97, PageID.749, 762.) Then, due to a computer error, this medical clearance could not be updated and the U.S. Marshals Service had to reprocess Olmos for transportation. (*Id*.) As a result, Olmos remained in Arizona

3

until June 13, 2025, when the Marshals finally began the transfer process, and did not arrive in the Eastern District of Michigan until July 2, 2025. (ECF No. 98, PageID.772.)

Olmos then had his arraignment on July 8, 2025. (ECF No. 93.) At that time, he entered pleas of not guilty to the three counts against him. (*Id.*) This is the first time a not-guilty plea was docketed. (As explained below, this is the date on which the Speedy Trial Act clock began to run.) The Court immediately entered a scheduling order setting the trial for September 4, 2025. (ECF No. 94.)

### B.

One week prior to his arraignment, Olmos filed the present motion to dismiss the indictment for a Speedy Trial Act violation. (ECF No. 90.) Olmos contends that he first appeared in this District, through counsel, at the February 18, 2025, telephonic conference to address the briefing on the bond appeal. And thus, he says, by the time he filed the present motion on July 2, 2025, he had been detained more than 70 non-excludable days without being brought to trial. (ECF No. 90, PageID.718–719.)

The government starts the Speedy Trial Act clock at a different time. It is the government's position that "[t]he Speedy Trial Act requires Olmos to be tried within 70 days of when he appears in this Court and pleads not guilty. That happened on July 8, 2025, while the instant motion was pending, so no time has accrued under the Act." (ECF No. 100, PageID.781.)

4

This dispute is the essence of Olmos' motion to dismiss. The Court now turns to resolving it.

## II.

"[T]he plain language of the [Speedy Trial Act] establishes the triggering date as 'the date the defendant has appeared before a judicial officer of the court in which such charge is pending.'" *United States v. Wilkerson*, 170 F.3d 1040, 1042 (11th Cir. 1999) (emphasis omitted) (quoting 18 U.S.C. § 3161(c)(1)). Here, there were bond appeal proceedings in this District prior to Olmos' transfer. Olmos waived his appearance for those proceedings and remained in the District of Arizona. He did not physically appear before a judicial officer in this District until July 7, 2025. Yet defense counsel claims that Olmos "had his first appearance in front of this Court on February 18, 2025" (ECF No. 90, PageID.713), when the Court conducted a telephonic status conference with counsel only to extend the stay of the release order and schedule the bond appeal (Feb. 18, 2025, minute entry and text order). With this as a starting point, Olmos says the 70 days to bring him to trial have expired. The Court disagrees, primarily because Olmos had not yet appeared in the charging district, his "appear[ance] before a judicial officer" did not occur via his attorney's notice of appearance, and he had not yet entered a not guilty plea.

To further explain, a similar argument, involving a similar chronology, was rejected by the district court in *United States v. Chin*, No. 22-00087, 2022 U.S. Dist. LEXIS 229624 (S.D. W. Va. Dec. 21, 2022). Like here, the magistrate judge in that detaining district ordered the defendant released, and the government appealed the

5

decision. At that time, defense counsel filed an appearance in the charging district. There was then a several-month delay in the transfer of the defendant to the charging district. Defendant finally appeared for his arraignment in the charging district about five months after his counsel's notice of appearance.

In denying defendant's motion to dismiss for a violation of the Speedy Trial Act, the court found that it "need not consider whether the transportation delay was reasonable under the Speedy Trial Act because the seventy-day period only began to run when Defendant appeared before a judicial officer in the Southern District of West Virginia for his arraignment." *Id.* at \*7. As the court explained, "[w]hile the Fourth Circuit has not yet ruled whether a defendant must physically appear in the charging district in order to trigger the seventy-day speedy trial period, many courts have held that this period does not begin to run until the defendant either physically appears, or waives the right to physically appear, at an arraignment in the charging district." *Id.* at \*7–8 (citation modified) (collecting cases); *accord United States v. Sylvester*, No. 03-20008, 2005 WL 1528248, at \*4 (E.D. Mich. June 16, 2005) ("The Sixth Circuit construes the term 'appear' to mean 'arraignment,' that is, when the defendant enters a not-guilty plea."), *aff'd*, 330 F. App'x 545 (6th Cir. 2009). Other courts have likewise "recognized that the seventy-day STA clock begins to run when the defendant arrives in the district of prosecution." *United States v. Santacruz*, No. 21-754, 2022 U.S. Dist. LEXIS 154258, at \*12 (S.D.N.Y. Aug. 26, 2022); *see also United States v. Grimes*, 702 F.3d 460, 466 (8th Cir. 2012) ("[T]he STA time period does not begin to accrue until a defendant appears in the particular district court in

6

which the charges against him are pending."), *aff'g*, No. 11-50029, 2011 WL 3422801, at *4 (D.S.D. Aug. 4, 2011) (holding that guidelines interpreting the Speedy Trial Act support a finding that the 70-day period does not start until the defendant is transferred and appears in the charging district); *United States v. O'Bryant*, 775 F.2d 1528, 1531 (11th Cir. 1985) (holding that the 70-day speedy trial timeframe did not start until the defendant was transferred from Maryland and appeared in the charging district of Florida).[1]

Ultimately, the *Chin* court found that "[t]he plain language of the Speedy Trial Act requires an appearance before a judicial officer of the charging district, not an appearance by counsel via filing a motion." 2022 U.S. Dist. LEXIS 229624, at *9; *see also* 18 U.S.C. § 3161(c) (stating that trial must commence within 70 days of *the defendant* appearing before a judicial officer of the charging district). Likewise, this Court sees no reason why counsel's appearances here for the bond appeal proceedings, while Olmos intentionally remained in the District of Arizona hoping to be released there, should trigger the Speedy Trial clock.

This is consistent with the Sixth Circuit's guidance "that 'the plain meaning of the language of the [Act] requires a not guilty plea to begin the clock running.'" *United States v. Levon*, 127 F. App'x 865, 869 (6th Cir. 2005) (quoting *United States v. O'Dell*, 154 F.3d 358, 360 (6th Cir. 1998); citing 18 U.S.C. § 3161(c)(1)). Again, the

---

[1] "The parties make additional arguments about what it means for a defendant to "appear" under § 3161(c)(1) by contrasting subsection (c)(1)'s reference to a defendant's "appear[ance]" with the statute's reference to a defendant's "presence" in subsections (h)(3) and (j).

7

Speedy Trial Act specifically applies to "any case in which a plea of not guilty is entered." 18 U.S.C. § 3161(c)(1). "Because 'the statute expressly applies only to cases in which pleas of not guilty have been entered,' the date on which the defendant pleaded not guilty . . . 'started the Speedy Trial Act clock in this case.'" *Id.* (quoting *United States v. Nixon*, 779 F.2d 126, 130 (2d Cir. 1985)); *see also O'Bryant*, 775 F.2d at 1531–32 (holding that the clock did not begin to run until the defendant appeared before the district court with counsel and entered a not guilty plea, despite having initially appeared before the court without counsel six days earlier).

Pushing back a bit, Olmos argues that the Speedy Trial Act "is broadly written to encompass circumstances in which the defendant first appears at a different hearing" that is not an arraignment. (ECF No. 104, PageID.810–811.) But the two cases Olmos cites are distinguishable. He says that the Sixth Circuit noted that the defendant's "first appearance" for purposes of the Speedy Trial Act was at the defendant's initial appearance in *United States v. Mentz*, 840 F.2d 315, 325 (6th Cir. 1988), and at the defendant's detention hearing in *United States v. Gardner*, 488 F.3d 700, 717 (6th Cir. 2007). In both cases, though, the Sixth Circuit concluded that the relevant Speedy Trial date was the defendant's indictment, which came later. So the Court's identification of the defendants' first appearance before a judicial officer came only in dicta, which the Court had no reason to scrutinize in light of the undisputed later date of the indictment. *See Mentz*, 840 F.2d at 325 ("Mentz's appearance before a magistrate on either August 11 or August 18 constituted the date he 'appeared before a judicial officer of the court in which [the] charge is pending.' Since his

8

indictment on September 9 occurred later, this subsequent date triggered the speedy trial clock for purposes of section 3161(c)(1)." (citation omitted)); *Gardner*, 488 F.3d at 717 ("[Defendant's] first appearance in court was a detention hearing held on July 29, 2004. Gardner was then indicted on August 25, 2004, and he was tried beginning on May 17, 2005. Therefore, Gardner's speedy trial calculation begins on the date of his indictment, and Gardner was not tried until 265 days later.").

Here, despite the language of a "special limited appearance" of his substitute counsel that is not part of the record in this Court, Olmos appeared and entered his not-guilty plea during his July 8, 2025, arraignment—well *after* the indictment. In other words, it was on July 8, 2025, that Olmos was physically present in this District, appeared before a judicial officer of the charging court to be arraigned, and entered a plea of not guilty. This is the date that triggered the running of the Speedy Trial clock. Olmos' trial was initially scheduled for September 4, 2025 (ECF No. 94), well within the 70-day timeframe. As the government points out, because Olmos filed this Speedy Trial Act motion before July 8, 2025, "no time has accrued on the clock." (ECF No. 100, PageID.781.) Therefore, there is no violation of the Speedy Trial Act.

### III.

Even if the Court found a Speedy Trial Act violation, it would not dismiss the indictment with prejudice. The Act allows for dismissal with or without prejudice "and does not establish a default presumption." *United States v. Gross*, 432 F. App'x 490, 493 (6th Cir. 2011) (citing *United States v. Robinson*, 389 F.3d 582, 586 (6th Cir. 2004); 18 U.S.C. § 3162(a)(2); *United States v. Taylor*, 487 U.S. 326, 334 (1988)).

9

"Instead, the Act prescribes three factors that the district court must take into account in making such a determination: 'the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.'" *Id.* (citing 18 U.S.C. § 3162(a)(2)).

*Seriousness of the offense*: Olmos is charged with involvement in a significant drug distribution conspiracy, for which the quantity of cocaine and methamphetamine prescribes a mandatory minimum sentence of 10 years. The Sixth Circuit "has categorically labeled drug offenses as serious." *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000). This factor favors dismissal without prejudice.

*Facts and circumstances leading to dismissal*: "[T]he relevant 'facts and circumstances' are those that led to the passing of more than seventy nonexcludable days." *United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018). Here, that is almost entirely attributable to the delay in transporting Olmos to the charging district. As the government explained (in a related Speedy Trial Act motion):

> According to the U.S. Marshals service in the District of Arizona, Olmos was planned for removal to the Eastern District of Michigan after February 20, 2025. However, the marshals identified that Olmos needed a Tuberculosis medical clearance from his detention facility before he could be cleared for transportation via the Justice Prisoner Air Transportation System (JPATS) out of his district. Once the medical clearance was requested and received, the marshals could not update the medical clearance due to computer errors and had to reprocess Olmos for transportation, which occurred on June 7, 2025.

10

(ECF No. 97, PageID.749; *see also* ECF No. 100, PageID.798 ("[C]omputer errors that occurred due to medical clearance requirements for transporting the defendant are ultimately what resulted in the delay in his transportation.").)

While the government should have exercised more oversight over Olmos' transportation, there is no evidence of bad faith or any attempt by the prosecution to take advantage of the delay. *See United States v. Bauer*, 286 F. Supp. 2d 31, 34 (D.D.C. 2003) (concluding that dismissal would be without prejudice because "the failure to comply with [the transportation order] was not willful or malicious and the government ha[d] not sought and certainly ha[d] not gained any tactical advantage by the delay"). So this factor does not weigh in favor of dismissal with prejudice.

*Impact of reprosecution on the administration of the Speedy Trial Act and justice*: "The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *United States v. Robinson*, 389 F.3d 582, 589 (6th Cir. 2004). Olmos, who made the decision to remain in Mexico and not return to the United States for several years after his indictment, has not shown any actual prejudice from the delay. He has not demonstrated an inability to prepare a defense or the loss of any evidence or witnesses during the delay. Nor did the government engage in any improper behavior that needs to be deterred in order to ensure compliance with the Act. "[H]ere there is no allegation that the error was anything other than a one-time anomaly by the U.S. Marshals Service. Defendant

11

does not contend that this is a recurrent problem, or that there was intentional misconduct." *United States v. Dellinger*, 980 F. Supp. 2d 806, 816 (E.D. Mich. 2013).

In sum, there is no basis to dismiss this criminal prosecution for a violation of the Speedy Trial Act, let alone to dismiss it with prejudice.

## IV.

For these reasons, Defendant' motion to dismiss for a speedy trial right violation (ECF No. 90) is DENIED.

IT IS SO ORDERED.

Dated: August 26, 2025

                                       s/Laurie J. Michelson
                                       LAURIE J. MICHELSON
                                       United States District Judge